## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

PATRICK D. WILSON,                            Case No. 1:25-cv-10483

   *Plaintiff*,

*v.*                                          David M. Lawson
                                              United States District Judge

C. STEWART and TRINE,                         Patricia T. Morris
                                              United States Magistrate Judge

   *Defendants*.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT (ECF No. 28)

### I. RECOMMENDATION

For the following reasons, **IT IS RECOMMENDED** that the Court **DENY** Plaintiff's second motion to amend.  (ECF No. 28).  If the recommendation is adopted, the Undersigned will enter an amended scheduling order setting a new dispositive motion deadline.

### II. REPORT

#### A. Background

Plaintiff is a prisoner at the Cooper Correctional Facility in Jackson, Michigan, governed by the Michigan Department of Corrections (MDOC).  (ECF No. 1, PageID.2).  On February 19, 2025, Plaintiff filed this *pro se* civil rights case against Defendants Christina Stewart, the resident unit manager, and Cortney Trine,

1

the prison counselor, alleging violations of the Eighth Amendment, the Americans with Disabilities Act (ADA), and the Rehabilitation Act.   (*Id.* at PageID.4). Specifically, he alleged that when he arrived at Cooper, he requested a special accommodation to move to a different housing unit because his disability made it difficult to walk up and down the hill to his assigned housing unit.  (*Id.* at PageID.5). The request was not immediately granted, and he slipped and fell within the month, injuring himself.  (*Id.*).

On February 24, 2025, this Court issued a notice of early mediation program, informing Plaintiff that after the case was referred to the program, the MDOC "will arrange for the pro se plaintiff to watch an educational video explaining the prisoner mediation process."  (ECF No. 3, PageID.33).  This Court then stayed the case pending participation in the mediation program and directed Plaintiff "to show this Order to his or her Assistant Resident Unit Supervisor . . . upon receipt to schedule a date and time to see the *Pro Se* Prisoner Early Mediation Program's educational video that explains the program."  (ECF No. 6, PageID.37).

On March 12, Plaintiff sent the Court a letter asking the Court to force his administrator assistant to comply with the order.  (ECF No. 7).  On March 18, Austin Raines filed a notice of limited appearance on behalf of Defendants for the purpose of participating in the mediation program.  (ECF No. 8).  On April 28, this Court entered an order setting May 27, as the date for the mediation conference and

directed Plaintiff to show the order to the supervisor "to schedule a date and time to view, for a second time," the educational video. (ECF No. 9, PageID.44). Attached were informational materials including that "[a]n educational video explaining the prisoner mediation process has been prepared . . . . The video must be viewed before mediation takes place. The MDOC will arrange for you to see the video." (*Id.* at PageID.54).

After the mediation failed to resolve Plaintiff's claims, Plaintiff filed his first amended complaint, which is the operative complaint. (ECF No. 11). In addition to his prior claims, Plaintiff purported to add a First Amendment denial of access to the courts/retaliation claim against Defendants for not allowing him to watch the educational video or sending his medical authorization forms. (*Id.* at PageID.62).

On September 24, 2025, the Court entered a scheduling order setting a deadline for discovery of February 27, 2026. (ECF No. 26, PageID.122). On January 21, 2026, one month before discovery was scheduled to close, Plaintiff filed a motion to amend the complaint, seeking to add a new Defendant and several new state-law claims against existing Defendants. (ECF No. 28). However, he failed to attach the proposed amended complaint as required by the local rules; the Court gave him until February 23 to file the proposed amended complaint. (ECF No. 29). Plaintiff filed his proposed second amended complaint (ECF No. 37), and briefing has since been completed (ECF Nos. 42, 43).

3

**B.     Legal Standard**

Plaintiff's motion for leave to amend is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure, which provides that a party may amend their complaint "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a); *see also Berry v. Specialized Loan Servicing, LLC*, No. 18-cv-02721, 2020 WL 3485577, at *4 (W.D. Tenn. Feb. 24, 2020); *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009).

A court has discretion in whether to permit a plaintiff to amend their complaint.  *Berry*, 2020 WL 3485577, at *4 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Troxel Manuf. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970–71 (6th Cir. 1973)).  In its discretion to allow an amendment, a court considers factors such as undue delay, repeated failure to cure deficiencies by amendments previously permitted, bad faith or dilatory motive, futility of an amended pleading, and undue prejudice to the opposing party.  *Berry*, 2020 WL 3485577, at *4 (citing *Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 406 (6th Cir. 2006)).  An amendment may be denied as futile when the complaint still could not withstand a Rule 12(b)(6) motion to dismiss.  *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737–38 (6th Cir. 2022).

**D.     Discussion**

As explained below, Plaintiff's amendments are futile and should be denied because they would not survive a motion to dismiss.

Plaintiff's first proposed amendment seeks to add a new Defendant, Lyndsey Cavill, who is an administrative assistant at the prison, for allegedly violating his right to access the courts.  (ECF No. 28, PageID.127).  On March 4, 2025, Plaintiff received this Court's February 26, 2025 order directing him to show the order to his supervisor "to schedule a date and time to see the *Pro Se* Prisoner Early Mediation Program's educational video that explains the program."  (*Id.*).  He did so the next day and was informed by the supervisor that Cavill would schedule it.  (*Id.*).  However, he was not scheduled to see the video until 16 days later.  (*Id.*).  When asked why it took so long, Cavill "played it like it was nothing to worry . . . about."  (*Id.* at PageID.128).  Plaintiff's proposed second amended complaint further alleges that the video was supposed to be watched within two days of the Court's order.  (ECF No. 37, PageID.174).  As such, Plaintiff asserts Cavill "imped[ed] herself into this civil complaint, by disregarding this Court Order.  She had denied or delay Plaintiff [sic] Access to the Courts."  (*Id.*).

The First Amendment right of access to the courts includes prohibiting prison officials from erecting barriers that may impede such access.  *Resch v. Campfield*, No. 21-cv-293, 2021 WL 4739172, at *12 (W.D. Mich. Oct. 12, 2021).  In order to state a claim for violation of this right, a plaintiff must show he or she suffered an

actual injury.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Meaningful access is the touchstone of the right of access to the courts, so a prisoner must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Id.*  This, in turn, requires that the underlying action the plaintiff alleges he was or is being denied access to pursue must be non-frivolous and is an element that must be described in the complaint.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Additionally,

> the complaint must identify a remedy that may be awarded as recompense *but not otherwise available* in some suit that may yet be brought.  There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

*Id.* (emphasis added).   These claims have four elements: "(1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which is now otherwise unattainable." *Jackson v. City of Cleveland*, 64 F.4th 736, 746 (6th Cir. 2023) (citation modified).

Plaintiff has failed to sufficiently allege how Cavill obstructed him or why a delay of 16 days in watching the mediation education video prejudiced his underlying claim.  First, there is no indication anywhere in the record supporting his claim that the video must be watched within two days of the Court's order.  None of the Court's orders or information packets included this requirement.  (*See* ECF Nos.

3, 6, 9).  As such, Cavill did not "fail to comply with a court order," as pleaded. (ECF No. 43, PageID.226).  Additionally, the Administrative Order governing the *Pro Se* Prisoner Early Mediation Program implies that it will often take substantially longer than two days to arrange for a prisoner to watch the video.  *See* E.D. Mich. Admin. Order 21-AO-002 ("The thirty days' notice is to allow [MDOC] to arrange for the *pro se* plaintiff to watch an educational video explaining the prisoner mediation process.").

Moreover, even if the order stated the video should be watched within two days, Plaintiff still has not plausibly alleged that he was prejudiced.  On April 28, the Court scheduled the mediation for May 27, over two months after he first watched the video.  (ECF No. 9).  Plaintiff watched the video for a second time in early May, weeks prior to the mediation.  (ECF No. 42-3, PageID.221–22).  Plaintiff states he "was in the dark" about what to expect from the mediation program until he watched the video.  (ECF No. 43, PageID.237).  But he saw the video twice before the mediation and does not allege how the initial delay—if 16 days can even be called that—prejudiced him.  That Plaintiff "was in the dark" until he watched the video does not support the allegation that he was prejudiced in participating in the mediation, which occurred over two months after he first watched the video. Accordingly, Plaintiff fails to allege any prejudice to his underlying claim, even

assuming Cavill was obstructing his access to the Court.  Therefore, the Undersigned recommends denying the addition of Cavill as a party.

Although not listed as a cause of action, Plaintiff also seems to seek adding Jane Doe as a Defendant for a purported HIPAA violation.  (ECF No. 37, PageID.174).  The Court has already explained to Plaintiff that there is no private cause of action for a HIPAA violation.  (ECF No. 39, PageID.193).  Therefore, this amendment should also be denied.

Plaintiff's first amended complaint seems to contain similar HIPPA claims and denial of access to the courts claims against Defendants Trine and Stewart.  (*See* ECF No. 11, PageID.62).  Because Plaintiff is a prisoner and is proceeding *in forma pauperis*, his amended complaint is subject to screening, and these claims should similarly be dismissed.  *Ryan v. Michigan*, No. 22-cv-13002, 2024 WL 1941772, at *1 (E.D. Mich. Feb. 28, 2024).  First, there is no private cause of action for a HIPAA violation.  As for the access to the courts claim, Plaintiff does not describe how Defendants did anything that obstructed or prejudiced his claims.  Therefore, these claims should be dismissed *sua sponte* pursuant to the Court's authority under 28 U.S.C. §§ 1915 and 1915A.

Additionally, Plaintiff purports to add Cavill and Jane Doe to his existing causes of action under the Eighth Amendment, the ADA, and the Rehabilitation Act. (ECF No. 37, PageID.176–77).  But his proposed second amended complaint states

no facts alleging Cavill or Jane Doe were in any way personally involved in the delay in moving him between housing units. The only facts pertaining to Cavill or Jane Doe in the proposed second amended complaint have already been discussed and rejected above. These amendments should therefore be denied. *See Rouse v. Washington*, No. 20-cv-11409, 2021 WL 2434196, at *8–*10 (E.D. Mich. June 15, 2021) (dismissing where plaintiffs had failed to allege individual involvement of named defendants).

Finally, Plaintiff adds three new state law causes of action for mental and emotional distress and intentional infliction of emotional distress "as set forth in this complaint" and for gross negligence in depriving him of access to housing due to his disability. (ECF No. 37, PageID.177–78). As to Cavill and Jane Doe, these amendments should not be allowed for the same reasons as above—Plaintiff fails to state how these potential Defendants had anything to do with his housing issue.

These amendments should also be denied as to existing Defendants. To state a claim for intentional infliction of emotional distress in Michigan, a Plaintiff must show (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Reedy ex rel. D.R. v. Huron Sch. Dist.*, No. 25-1234, 2026 WL 483187, at *5 (6th Cir. Feb. 20, 2026). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quotation omitted).

Here, Plaintiff's allegations, taken as true, do not amount to conduct that goes beyond all possible bounds of decency to be regarded as atrocious and utterly intolerable in a civilized community. Plaintiff alleges he suffers from severe pain in his back and left ankle. (ECF No. 37, PageID.171). As such, when he arrived at Cooper on November 1, 2024, he requested a special accommodation to move to another housing unit. (*Id.* at PageID.172). Defendants seemed receptive but told Plaintiff he would have to wait a few days. (*Id.*). According to Defendant Trine, she had two other individuals to move to Plaintiff's requested building, but she did not know who would be first. (*Id.* at PageID.173). Over the next several weeks, two other inmates were moved to the requested housing unit. (*Id.* at PageID.172). When asked when he would be moved, Defendants replied saying it would be a few days and/or had dismissive attitudes. (*Id.* at PageID.172–73). Plaintiff alleges Defendants made statements such as "it's been handled" with a dismissive attitude, "you will be next to moved" with an attitude, and "get out of my face, I will move you when I'm good and ready" also with a dismissive attitude. (*Id.* at PageID.172–73; *see also* ECF No. 11, PageID.60–61). After the second inmate was moved, Defendant Trine told Plaintiff it was a logistics issue and he would be next. (*Id.* at

PageID.173). Before he could be moved, Plaintiff slipped and fell, injuring the left side of his body. (*Id.*).

These allegations, taken in the light most favorable to Plaintiff, fall "far short of the conduct which is considered tortiously outrageous." *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 608 (Mich. 1985) (quotation omitted). Even taken in the light most favorable to Plaintiff, the facts show that Defendants were working on moving him to another housing unit but that two other inmates had to be moved first. As bunks opened up, those inmates were moved, and Plaintiff was told he would be next and that there was a logistics issue they were working on. Although Defendants may have spoken dismissively when Plaintiff repeatedly asked when he would be moved, there is no allegation or indication that they were engaging in extreme and outrageous conduct when they told Plaintiff he would have to wait his turn for a move. Therefore, Plaintiff's motion to add a claim for intentional infliction of emotional distress should be denied.

Plaintiff's claim for "mental and emotional distress" should be similarly denied as duplicative of his claim for intentional infliction of emotional distress. There is no independent cause of action for "mental and emotional distress." *C.f. S.D. Benner, LLC v. Bradley Co., LLC*, No. 15-cv-673, 2019 WL 2056702, at \*16 (W.D. Mich. Mar. 29, 2019) ("Mental anguish is not a cause of action."), *aff'd*, 788 F. App'x 367 (6th Cir. 2019); *Trice v. Oakland Dev. Ltd. P'ship*, No. 278392, 2008 WL

7488023, at *17 (Mich. Ct. App. Dec. 16, 2008) (explaining emotional distress are damages that can be recovered for certain torts).

Finally, Plaintiff seeks to add a state law claim of gross negligence against Defendants for depriving him of access to housing due to his disability.  (ECF No. 37, PageID.177).  As discussed above, there was roughly one month between the time Plaintiff made his request until he was moved, during which time he fell and injured his left side.

"Under Michigan law, government employees are generally immune from tort liability for injury to a person if they are acting within the scope of their authority, performing government functions, and their conduct does not amount to gross negligence that is the proximate cause of the injury or damage." *Gillman v. City of Troy*, 126 F.4th 1152, 1161 (6th Cir. 2025) (quotations omitted).  Gross negligence under Michigan law is "'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'"  *Id.* (quoting Mich. Comp. Laws § 691.1407(8)(a)).  Proximate cause means "the one most immediate, efficient, and direct cause preceding an injury," which is to say, "conduct that is merely *a* proximate cause rather than *the* proximate cause of the injury is insufficient."  *Id.* at 1162 (quotation omitted, emphases in original).

Plaintiff has failed to allege that Defendants were *the* proximate cause of his injuries.  The sole factual allegation in his proposed second amended complaint

related to the fall is that "[o]n November 29, 2024 Plaintiff had a slip and fall, injuring his entire left side." (ECF No. 37, PageID.173).  Plaintiff filed a declaration with his proposed second amended complaint explaining:

> On November 29, 2024, it had snowed overnight, and I went to the chow hall for morning breakfast, and as I was returning back to my Housing Unit (H), I had a terrible slip and fall.  Injuring my entire left side.  My cubie Mr. Taylor, and someone else helped me up, and carried me inside Housing Unit (B).  I asked c/o Lewis, to call healthcare.
>
> On that same day, I was treated by RN Brown, for minor cuts, and so on.  As I was leaving healthcare, I over heard, Deuty Warden Lesley, fusing at the staff, about the snow wasn't shoveled or any salt put down.  So once healthcare door was opened, Deputy Warden Lesley, apologize for my terrible slip and fall.

(*Id.* at PageID.180 (sic throughout)).

Taking the facts in the light most favorable to Plaintiff, he has not pled that Defendants were the sole proximate cause of his slip and fall.  First, it appears that whether he was in housing unit H or B he would have had to travel outside on the snowy sidewalk.  Second, even if that is not the case, his own allegations show that a more direct proximate cause of his injuries is the fact that the sidewalk was not properly shoveled or de-iced prior to breakfast.  Plaintiff does not allege Defendants have anything to do with that function.  Thus, the failure to move him to housing unit B "could be a but-for cause, or *a* proximate cause, but not *the* proximate cause under Michigan's standard."  *Gillman*, 126 F.4th at 1162; *see also McColman v. St. Clair Cnty.*, 479 F. App'x 1, 8 (6th Cir. 2012) ("Because [plaintiff's] actions, not

[defendant's], were the most direct cause of her fall and injury, [defendant] was entitled to governmental immunity."). Therefore, Defendants are entitled to governmental immunity and Plaintiff's motion to amend to add a gross negligence claim against Defendants should be denied.[1]

### E. Conclusion

For these reasons, **IT IS RECOMMENDED** Plaintiff's motion to amend (ECF No. 28) be **DENIED** as futile for failing to state a claim.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.

---

[1] Finally, the Undersigned notes that even if Plaintiff's complaint sufficiently pled a gross negligence claim, his failure to timely add the potential claim also warrants denying the amendment, which he did not seek for almost a year after filing the complaint, already having amended it once, and shortly before the close of discovery. *Accord Tyco Lab'ys, Inc. v. Cutler-Hammer, Inc.*, 490 F. Supp. 1, 3–4 (S.D.N.Y. 1980) (denying leave to amend when amendment could have been made long before and granting it would not serve the interest of justice).

14

1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 2, 2026                                s/PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge

15